UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY BRADLEY, as Personal
Representative of the Estate of
MILFORD DOUGLAS REED, Deceased,

    Plaintiff,

vs.                                                               Case No. 12-11648

UNITED STATES OF AMERICA,                 HON. AVERN COHN

    Defendant.
_____/

**MEMORANDUM AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS (Doc. 11)**

### I. Introduction

This is a medical malpractice case brought under the Federal Tort Claims Act, 28 U.S.C. § 1346, et seq (FTCA). Plaintiff Beverly Bradley (plaintiff), personal representative of the estate of Milford Douglas Reed (Reed), is suing the defendant United States of America (defendant), claiming that Reed's death was caused by Dr. Ahmer Rehman's (Rehman) improper diagnosis of Reed while he was a patient at John D. Dingell Veterans Administration Medical Center (VAMC).[1] Plaintiff's suit is in two counts: (1) ordinary negligence/medical malpractice, and (2) negligence, malpractice and willful and wanton misconduct. Before the Court is defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 11). For the following reasons, the motion will be denied.

### II. Background

The facts as gleaned from the parties' papers follow.

---

[1] Plaintiff also brought suit against Rehman. The Court entered a stipulated order substituting the United States as defendant for Rehman (Doc. 13).

During the early morning on April 24, 2009, Reed, a 59-year-old male, was transported by EMS to the emergency department of the Detroit Receiving Hospital (DRH). Reed complained of chest pain and mild dyspnea. He had a significant past medical history of hypertension and benign prostatic hyperplasia. After several tests, doctors informed Reed that he had unstable angina.

Reed was transferred to the Detroit Medical Center-Harper Hospital (DMC) for a precutaneous cardiac catheterization. After performing the precutaneous cardiac catheterization, doctors diagnosed Reed with non-obstructive coronary artery disease, with a normal left ventricular ejection fraction. Reed tolerated the procedure well and was transferred to the post-catheterization area in stable condition. The doctors did not assess Reed's peripheral pulses or perform a CT scan to rule out an aortic dissection. DMC discharged Reed after providing him with post-catheter care education even though he continued to have some chest pain.

Later that evening Reed continued to suffer chest pain, tachypnea and diaphoresis; he went to the VAMC emergency room. At the VAMC, Reed was treated by Rehman. Reed's chest pain dissipated before he was examined by Rehman. However, the pain had migrated to his abdomen. Rehman determined that Reed's pain was non-cardiac and likely secondary to gastric esophageal reflux disease and anxiety. Rehman did not assess Reed's peripheral pulses or perform a CT scan to rule out an aortic dissection. Reed was discharged that evening and instructed to follow up with his primary care physician and psychologist.

Early the next morning, on April 25, 2009, Reed was transported to the emergency department of DMC unresponsive and in full cardiac arrest. He was pronounced dead

2

shortly after his arrival and resuscitative efforts were unsuccessful. That same day, Reed's family members were informed that he died as a result of a heart attack. Reed's family was also informed that the Wayne County medical examiner's office would perform an autopsy.

On April 28, 2009, the medical examiner performed an autopsy and determined that Reed died because of aortic dissection. The examiner stated, "It is my opinion that death was due to aortic dissection. Autopsy disclosed the aforementioned dissection of the aorta with rupture in to the pericardium." The certificate of death was signed the same day. Reed's daughter contacted the medical examiner's office to obtain a copy of the autopsy report. However, Reed's daughter was told that the office was backed-up, and it would take two to three months to receive a copy of the report. After following up several times, the medical examiner's office finally contacted Reed's daughter to inform her that the post mortem and toxicology reports were available for pick-up. Approximately one week later, on August 4, 2009, Reed's daughter picked up the reports from the medical examiner's office.

On August 10, 2009, Reed's daughter met with and retained counsel. Reed's daughter was appointed personal representative of Reed's estate on October 1, 2009. On October 6, 2009, counsel ordered all records pertaining to Reed from the VAMC and DRH. On February 5, 2010, counsel received the VAMC records. The records indicated that Reed underwent a cardiac catheterization at DMC, but did not include a report or film of the catheterization. On March 22, 2010, counsel ordered the DMC records pertaining to Reed. On May 6, 2010, counsel received the DMC records; the records did not provide a full report or film of the catheterization. On January 3, 2011, after several requests, followed by incomplete responses, DMC finally provided complete records including the report and

film of the catheterization.[2] However, plaintiff says this still did not provide enough information to determine that Reed's death was caused by an omission or commission of a government doctor.

All of Reed's records were forwarded to an interventional cardiologist to determine whether any doctor breached an applicable standard of care. On July 1, 2011, the interventional cardiologist opined that DMC and VAMC doctors breached the standard of care owed to Reed.

On July 29, 2011, an administrative claim was filed with the Department of Veterans' Affairs (Department) on Reed's behalf, alleging medical malpractice. On October 12, 2011, the Department denied the administrative claim as untimely. Bradley replaced Reed's daughter as personal representative of Reed's estate and then brought this suit on April 12, 2012.

### III. Standard of Review

A Fed. R. Civ. P. 12(b)(1) motion seeks dismissal for a court's lack of subject matter jurisdiction. The motion may be based on either a facial attack or a factual attack on the allegations of the complaint. Tri-Corp Mgmt. Co. v. Praznik, 33 F. App'x 742, 745 (6th Cir. 2002). If subject matter jurisdiction is facially attacked, the court must take all material allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. United States v. A.D. Roe. Co., 186 F.3d 717, 721–22 (6th Cir. 1999). If, however, there is a challenge to the factual existence of subject matter jurisdiction, the

---

[2] Plaintiff says counsel was provided with incomplete records on June 25, November 9, December 9, and December 21 of 2010. Although DMC provided some records pertaining to the catheterization, it did not provide the core report that "documented the procedure minute-by-minute."

court is "empowered to weigh the evidence and no presumptions apply as to the truthfulness of the relator's allegations." Id.

The Court will use both standards when reviewing the motion. Defendant first makes a facial attack on the Court's jurisdiction. Alternatively, defendant says plaintiff's claim is barred by the diligence-discovery rule, requiring the Court to review the motion as a factual attack on the Court's jurisdiction.

## IV. Discussion

1.

Defendant contends the Court must dismiss plaintiff's claim for lack of subject matter jurisdiction. Defendant says plaintiff did not timely file an administrative claim, and, therefore, the FTCA bars suit. According to defendant, plaintiff's claim accrued on April 25, 2009, when Reed died. An administrative claim was not filed until August 2, 2011, beyond the permissible two-year period after the claim accrued. Defendant alternatively argues that, should the Court apply an "inquiry-notice" standard, plaintiff's claim is nonetheless time-barred.

Bradley says her claim is timely because she was not aware of the facts giving rise to the cause of action until, at the earliest, August 4, 2009, when the autopsy report was released to Reed's daughter, and, therefore, she filed an administrative claim within the two-year period.

2.

As a general principle, the United States is immune from suit unless it clearly consents to be sued, waiving its immunity. United States v. Sherwood, 312 U.S. 584, 586 (1941); United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). In a

5

claim under the FTCA, the United States is liable for money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . . ." 28 U.S.C. § 1346(b); Sheridan v. United States, 487 U.S. 392, 398 (1988). However, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . . ." 28. U.S.C. § 2401(b).

The Supreme Court defined when a medical malpractice claim accrues under 28 U.S.C. § 2401(b) in United States v. Kubrick, 444 U.S. 111 (1979). In Kubrick, a veteran was treated at a veterans' administration (VA) hospital for an infection of the right femur. Id. at 113. The veteran suffered from loss of hearing after treatment. Id. The undisputed evidence showed that the veteran was aware of his injury and its probable cause in January of 1969. Id. at 118. The Supreme Court stated that the veteran's claim accrued when he became aware of his injury because the veteran knew of the injury itself and simply had to investigate its cause. Id. at 122. The Supreme Court rejected the notion that a medical malpractice claim does not accrue unless the plaintiff is aware that the injury was negligently inflicted. Id. at 123. The Supreme Court reasoned, "[t]here are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff." Id. at 122. In Kubrick, however, the veteran never made an inquiry as to whether he had a cause of action, even though all the facts were in his possession. Id. at 123.

The Sixth Circuit has also addressed the question of when the statute of limitations begins to run in a medical malpractice action under the FTCA. Garrett v. United States, 640 F.2d 24 (6th Cir. 1981) (per curiam); Chomic v. United States, 377 F.3d 607 (6th Cir. 2004). In Garrett, a prisoner's estate brought suit against the Bureau of Prisons ("BOP") alleging wrongful death resulting from negligent medical treatment. 640 F.2d at 25. The prisoner died on May 5, 1976. Id. On June 6, 1978, the estate filed an administrative claim. Id. at 25-26. The BOP denied the estate's claim because it was filed more than two years after the prisoner's death. Id. at 26. On July 25, 1978, the estate filed suit in federal court, which was also dismissed as untimely. Id. The Sixth Circuit held that the claim accrued at the time of the prisoner's death, rejecting the estate's argument that the statute of limitations did not begin to run until the autopsy report was released. Id.

After Garrett, however, the court of appeals in Chomic clarified that the date of death is not necessarily when a claim accrues. In Chomic, James Gorjup slipped and fractured his hip while he was a resident at the Department of Veteran Affairs Medical Center in Michigan. 377 F.3d at 608. One month later, on November 23, 1998, Gorjup died. Id. On November 17, 2000, Jennie Chomic, Gorjup's personal representative, filed an administrative claim against the United States on Gorjup's behalf. Id. at 609. The claim was filed within two years of Gorjup's death, but not within two years of the injuries he suffered on October 21, 1998. Id. The claim was denied by the Department of Veterans Affairs. Id. On February 19, 2002, Chomic filed suit in federal court seeking damages under Michigan's Wrongful Death Act. Id. The court of appeals agreed with the district court in holding that Gorjup's claim accrued on the date of his injury, rather than the date of his death. Id. at 609-10. The court of appeals reasoned that Michigan does not

7

recognize wrongful death as a stand-alone cause of action. Accordingly, the death of a plaintiff is not what creates a cause of action under the FTCA. Id. at 611. Rather, it is the underlying negligence or medical malpractice that is alleged that creates the cause of action. Thus, the court of appeals applied Kubrick, reasoning that, "[f]ederal law is clear that a negligence or medical malpractice claim accrues within the meaning of § 2401(b) when a plaintiff knows of both the existence and the cause of his injury." (citation omitted). As a result, Chomic's claim was barred because Gorjup's injury and its alleged cause were known on October 21, 1998.

The court of appeals in Chomic stated that its decision was supported by the Fourth Circuit's holding in Miller v. United States, 932 F.2d 301 (4th Cir. 1991). Miller is factually similar to this case. In Miller, the court of appeals considered the statute of limitations period in a medical malpractice case brought under the FTCA. Id. at 302. Milica Petzak was a military dependent and went to see her physician, Dr. Bomar. Id. She complained of urinary frequency, pain in her toes, left hip and lower back. Id. Dr. Bomar performed a physical examination on Petzak and he noted that her breasts were "within normal limits." Id. Other government doctors also treated Petzak and did not notice anything wrong with her breasts. Id. Petzak later developed breast cancer. Id. Petzak's executrix brought suit after Petzak's death "alleging that the negligence of government doctors in failing timely to diagnose her breast cancer proximately caused Mrs. Petzak's death." Id. at 302-03. The Miller court of appeals held the claim was time-barred because Petzak knew of her injury – that Dr. Bomar and other government doctors failed to conduct proper tests to diagnose her cancer – when she was diagnosed with cancer. Id. at 304. In other words, her claim accrued when she became aware that prior doctors may have missed her cancer.

Similar to Chomic and Miller, Reed's cause of action accrued at the time he knew of both the existence and the cause of his injury was known. Chomic, 377 F.3d at 612. "[I]n states with no independent cause of action for wrongful death, once a person knows of an injury and its cause, he has two years to file a claim based on negligence or medical malpractice. An intervening death does not alter this rule. . . ." Id. at 613. The issue, then, is determining when Reed or his personal representative knew of both the existence and cause of his injury. Plaintiff's argument that she was not aware of the existence and the cause of Reed's injury until DMC records were reviewed by plaintiff's expert is not persuasive. However, defendant also misstates the law when it says Reed's claim accrued at the time of his death. See Chomic, 377 F.3d 607. Reed's claim accrued sometime before plaintiff's expert opined that DMC and VAMC breached applicable standards of care, but after his death.

Here, the injury alleged is Rehman's failure to diagnose Reed. It does not appear to the Court that Reed was aware of the existence and cause of his injury before he died. When Reed reported to the VAMC with abdomen pain, he was not aware that Rehman allegedly failed to diagnose his condition or administer the proper tests. Reed certainly did not know of the injury when he was brought to the emergency department at DMC the next day, where he was unresponsive. When he died, Reed's family was informed that he suffered a deadly heart attack. Reed's family could not have known of the existence and cause of his injury when doctors informed them that the cause of death was a heart attack. Similarly, Reed's family would not have known of the injury simply by looking to the certificate of death or autopsy report, which showed that Reed died because of aortic dissection. The facts in the autopsy report were not enough to put plaintiff on notice that

Reed's death was caused by anything other than natural causes. On February 5, 2010, plaintiff became aware of the existence and cause of the injury, when the first set of VAMC records were released, and Reed's family learned of his prior treatment for the first time.[3]

3.

Defendant alternatively argues that plaintiff's claim was not timely under the "diligence-discovery rule."[4] Under this standard, the accrual date is when "(A) the plaintiff discovers; or (B) a reasonable person in the plaintiff's position would have discovered that he has been injured by an act or omission attributable to the government." Arroyo v. United States, 656 F.3d 663, 668 (7th Cir. 2011) (citations omitted); see also Castillo v. United States, 656 F.3d 135 (2d Cir. 2011). Again, as explained above, plaintiff did not discover, nor would a reasonable person in plaintiff's position have discovered, that Reed was injured by an omission attributable to the government until the medical records were released. The first set of records was released on February 5, 2010.

4.

In sum, the Supreme Court's decision in Kubrick makes clear that a medical malpractice claim under the FTCA accrues when a claimant first knows of an injury and its

---

[3] Without knowing of his prior treatment, plaintiff could not have known that Reed may have been mis-diagnosed. Defendant says plaintiff should have known that, because Reed had been discharged from the emergency room the night before, there was a possibility that his death was due to medical malpractice. Defendant, however, fails to acknowledge that plaintiff would not know about the prior treatment until she received the first set of medical records. Defendant provides no evidence to show that plaintiff otherwise knew of Reed's emergency visit.

[4] Defendant erroneously refers to this rule as the inquiry-notice rule. The Kubrick standard, however, is referred to as the inquiry-notice rule. See Hertz v. United States, 560 F.3d 616 (6th Cir. 2009).

cause, not when it is determined that a legal claim is maintainable. Here, the earliest that plaintiff knew of both the existence and cause of Reed's injury was when the first set of VAMC records was released on February 5, 2010. Thus, the administrative claim was timely filed.[5]

### V. CONCLUSION

For the reasons above, defendant's motion is DENIED. Plaintiff's administrative claim was timely filed within the two-year limitations period mandated by the FTCA.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: October 2, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 2, 2012, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160

---

[5] Having determined that plaintiff's administrative claim was timely filed, the Court does not address the parties' arguments regarding equitable tolling of the FTCAs statute of limitations.

11